# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

---

## No. 15-2166

---

## UNITED STATES OF AMERICA,

### Appellee,

### V.

## JOSH A. WAIRI,

### Appellant/Defendant.

---

### On Appeal from a Judgment of the United States District Court
### District of Massachusetts

---

### Opening Brief of the Appellant/Defendant

**Raymond E. Gillespie, Esquire**
**Attorney for Appellant/Defendant**
**Cir. No. 12042**
**875 Massachusetts Avenue Suite 32**
**Cambridge, MA  02139**
**(617) 661-3222**
**rgillespie1@prodigy.net**

# **Table of Contents**

Table of Authorities……………...………………………………………………3

Jurisdictional Statement………………………….…………………………..4

Statement of the Issue………………………………………………….……4

Statement Regarding Oral Argument…………………………………….…..5

Statement of the Case………………………………………….…..…………5

Statement of  Facts………………………………………….………..…..6

Summary of the Argument…………………………….………..……….......9

Argument………………………………………….….…..…………....9

    I.      **First Time Offender Josh Wairi's 12 Year Sentence For Possession and Transportation Of Child Pornography is Unreasonable Because the Court Sentenced an Offence and Not the Offender**............................................................9

        **Standard of Review**........................................................10

        **A.  Procedural Unreasonableness**....................................10

        **B.  Substantive Unreasonableness**.................................19

Conclusion………………………………………………………….......26

Certificate of Compliance.........................................................27

Addendum…………………………………….………………………28

.

## <u>Table of Authorities</u>

### <u>Cases</u>

<u>Gall v. United States</u>, 552 U.S. 38, 128 S.Ct. 586 (2007)............................*passim*

<u>United States v. Crespo-Rios</u>,  787 F.3d 34 (1st Cir. 2015)..................................10

<u>United States v. Dixon</u>, 449 F. 3d 194 (1st Cir. 2006)................................................5

<u>United States v. Duarte</u>, 246 F.3d 56 (1st Cir. 2001)...............................................10

<u>United States v. Pulido</u>, 566 F.3d 52 (1st Cir. 2009)................................................15

<u>United States v. Flores-Machicote</u>, 706 F.3d 16 (1st Cir. 2013)........................18,19

<u>United States v. Jimenez-Beltre</u>, 440 F.3d 514 (1st Cir. 2006)..............................19

<u>United States v. King</u>, 741 F.3d 305 (1st Cir. 2014)................................................19

<u>United States v. Olhovsky</u>, 562 F.3d 530 (3d Cir. 2009)..................................22,23

<u>United States v. Santiago-Rivera</u>, 744 F.3d 229 (1st Cir. 2014)...........................19

<u>United States v. Scherrer</u>, 444 F.3d 91 (1st Cir. 2006)(*en banc*)(Lipez, J., concurring)........................................................................................................15,17

<u>United States v. Stone</u>, 575 F.3d 83 (1st Cir. 2009)................................................17

### <u>Statutes</u>

18 U.S.C. §3553(a).................................................................................*passim*
18 U.S.C. § 2251(a)..........................................................................................5
18 U.S.C. § 2252A(a)(1).....................................................................................5
18 U.S.C. § 2252A(a)(5)(B).................................................................................5
18 U.S.C. § 2253..............................................................................................5

28 U.S.C. § 1291…..………………….…….…………………………….…….…..…4

**Other**

U.S.S.G. § 2G2.2(b)(2)....................................................................................4,8
U.S.S.G. § 2G2.2(b)(3)(B)...............................................................................4,8
U.S.S.G. § 2G2.2(b)(6) ...................................................................................4,8
U.S.S.G. § 2G2.2(b)(7)(D)...............................................................................4,8
U.S.S.G. § 3E1.1..............................................................................................4,8

Abel Assessment of Sexual Interest - 3. .............................................................16

Avery, Laura E,        "The Categorical Failure of Child Pornography Law", 21
                      Widener Law Review 51 ), most recently accessed at,
                      http://widenerlawreview.org/files/2015/02/8-Avery-1.pdf   25

Millon Clinical Multiaxial Inventory - III  ...........................................................16

## Jurisdictional Statement

The district court had jurisdiction of this case because the defendant was charged with a violation of federal criminal law.  Under 28 U.S.C. §1291 this Court of Appeals has jurisdiction of defendant's appeal of his sentence contained in the final judgment of the district court.

## Statement of the Issue

I.      **WHETHER FIRST TIME OFFENDER JOSH WAIRI'S 12 YEAR SENTENCE FOR POSSESSION AND TRANSPORTATION OF CHILD PORNOGRAPHY WAS PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE BECAUSE THE   COURT SENTENCED AN OFFENCE AND NOT THE   OFFENDER?**

## Statement Regarding Oral Argument

Defendant respectfully suggests that oral argument will assist the Court in rendering a just decision in this appeal.

## Statement of the Case

On May 15, 2014 the defendant-appellant, Josh A. Wairi, ("defendant", "Josh",  "Mr. Wairi" ) was charged in the district of Massachusetts in a four count indictment alleging transportation of child pornography in violation of 18 U.S.C. §2252A(a)(1) (count one), and production and attempted production of child pornography  in violation of 18 U.S.C. § 2251(a) (counts two, three and four). There was also a criminal forfeiture allegation pursuant to 18 U.S.C. §2253.  D-8. On March 5, 2015  a superseding indictment was returned adding a count five charging the defendant with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  D-34. [1]

On May 5, 2015 after a four day trial the jury returned verdicts of guilty on the transportation and possession charges and not guilty on the production and attempted productions charges.  D-91.  Sentencing took place over two days on May 29 (enhancements hearing), D-104, and September 14, 2015 .  D-116.  Judge

---

[1]    References to the record are as follows:  Docket, "D-#"; Addendum, "Add. #"; Appendix, "App. #; Supplemental Appendix, "Supp. App."; other pleadings and documents by their names.

Young sentenced Mr. Wairi to one hundred forty-four (144) months in prison, concurrent on both counts, eight years of supervised release with standard and special conditions, and a special assessment of $200.  Id.  It also allowed the government's  request for forfeiture and recommended that Mr. Wairi be placed in a facility with psychiatric care/sex offender treatment.  Id.  Judgment entered on October 2, 2015.  D-143.  Add.  1.  Defendant filed a notice of appeal to this Court on September 23, 2015.  D-114.

This appeal is from a final judgment resolving all issues in the trial court .

## Statement of Facts

The following contains pertinent but not all relevant facts to this appeal. Others will be discussed in the argument section.

## The Offense

In the summer of 2013, law enforcement received information from a national watchdog organization that child pornography had likely been traded on the internet from a computer in Massachusetts.  D- 2-1,  Affidavit in Support of Criminal Complaint, ¶ ¶ 6, 14, 30.   An investigation ensued.  Ultimately, on April 17, 2014 it resulted in the search and seizure of various computers, cameras, and storage devices from the condominium apartment in Somerville of  the 27 year old defendant, Josh A. Wairi, who was placed under arrest.  Id.  ¶ 32. Although stunned by the turn of events, Mr. Wairi willingly cooperated with the officers and

gave them a detailed description of his addiction to the viewing of child

pornography which he had been engaging in since his mid-teen years.  He

discussed the type and quantity of child pornography he possessed; how he had

meticulously organized and labeled his collection by gender, age, activity, etc.; and

his use of a file-sharing website based in Russia to exchange still and video images

of minor children engaging in explicit sexual activity both with peers and adults.

Supp. App. 12 - 16.  He admitted to surreptitiously video-taping  pre-adolescent

boys, including some of his own students, while they undressed and showered at

summer camps on Cape Cod and in Maine as well as at a swimming pool in

Somerville when he was acting as their chaperone and counselor.  Supp. App.  17.

He denied ever actually sexually assaulting any child.  As a result of the notoriety

generated by his arrest he immediately had to resign from his position as a fifth

grade teacher at a Cambridge elementary school.  Supp. App.  32, ¶ 118.  He was

detained until his sentencing on September 14, 2015.   He is now serving a twelve

year sentence in federal prison.

**<u>The Trial</u>**

Josh went to trial only because the prosecution insisted on guilty pleas to the

production charges in this case.  App. _97.  He has always maintained that the

videos he so wrongfully filmed of  the young boys were not actually child

pornography.  The jury agreed with him and he was acquitted of those charges.

Josh assented to his trial counsel literally asking the jurors in open court to convict him on the transportation (count one) and possession (count five) charges.  They complied.  App.  103 - 104.

## The Sentencing

The district court determined the applicable guidelines' enhancements at a separate hearing on May 29, 2015.  D-104.  It used the same enhancements to calculate the guideline sentencing range at final sentencing on September 14.  Those enhancements were:  plus <u>two</u> levels for depiction of a prepubescent minor, U.S.S.G. § 2G2.2(b)(2), plus <u>five</u> for distribution for receipt of a thing of value, to wit: other child pornography, U.S.S.G. § 2G2.2(b)(3)(B), plus <u>two</u> for the use of a computer in the offense, U.S.S.G. § 2G2.2(b)(6) and plus <u>five</u> because Josh possessed more than 600 images containing child pornography.  U.S.S.G. § 2G2.2(b)(7)(D).  App.  97.  With a base offense level of 22, the court found an adjusted offense level of 36.  <u>Id</u>.  The court also took the unusual step, over the government's objection, of granting Josh a full three level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 in spite of  having gone to trial.  <u>Id</u>.  104.  The total offense level was thus 33.  With a criminal history category of  I because this was Mr. Wairi's  first offense, the guideline sentencing range (GSR) was established at 135 to 168 months' imprisonment.  <u>Id</u>.  The applicable range of

supervised release was five years to life.  There was a special assessment of $200 and a possible fine between $17,500 to $175,000.  Id.

The court imposed a sentence of 144 months in prison followed by 8 years of supervised release with standard conditions and numerous special conditions, as set forth in the judgment, Add. 4-6, all of which the defendant agreed to.  App. 94. There was a special assessment of $200 and no fine due to inability to pay. Supp. App.  83.

### Summary of the Argument

Mr. Wairi's sentence was procedurally and substantively unreasonable because the court did not adequately address his personal history and characteristics as required by 18 U.S.C. § 3553(a)(1) and did not articulate a plausible rationale for the extreme period of imprisonment it imposed on this first-time offender, who led an exemplary life apart from his sordid child pornography addiction.  The reasoning was somewhat obscure but clearly indicated that the heinous nature of the offense was so dominant in the court's thinking that it prevented any consideration of Josh as a unique, albeit deeply flawed, individual. The result is not defensible based on a careful reading of the record.

### Argument

I.  **FIRST TIME OFFENDER JOSH WAIRI'S 12  YEAR SENTENCE FOR POSSESSION AND TRANSPORTATION OF CHILD PORNOGRAPHY WAS UNREASONABLE BECAUSE**

**THE COURT SENTENCED AN OFFENCE AND NOT THE OFFENDER.**

**Standard of Review**

The standard of review for a preserved claim of an unreasonable sentence is abuse of discretion.   United States v. Crespo-Rios,  787 F.3d 34, 37 (1st Cir. 2015).  Although the defendant did not object to the sentence when imposed, he respectfully requests that the abuse of discretion measure be used at least as to the question of substantive reasonableness as that is the rule which prevails in most circuits and was affirmed by the Supreme Court in Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 598 (2007) ("The uniqueness of the case, however, does not change the  deferential abuse of discretion standard of review that applies to all sentencing decisions.").   Assuming the Court will not change its practice at this time, Mr. Wairi must show plain error to prevail in this appeal.  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  Plain error requires a showing "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Id.

**A.  Procedural Unreasonableness.**

"The district court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and

- 10 -

characteristics of the defendant;"   18 U.S.C. § 3553(a)(1).  Add. 17.  Here the

court  certainly considered the nature and circumstances of Josh's offense, at least

from the government's perspective.

The Prosecution's Sentencing Argument

The disposition transcript extends for sixteen pages to encompass the

government's argument.  App. 105-120.  The prosecutor's presentation was

passionate and eloquent.  Collecting and viewing child pornography "are not

victimless crimes."  "It fuels a market" and "validates the sexual exploitation of the

children" and "thereby leads to further production of images." Id. 107.  The

defendant did more than merely possess the images, he distributed them.  He

"participat[ed] in a child sexual predator community ", the file-sharing website,

"Image Source", operating out of Russia, for approximately one year, in her words,

"a community dedicated to the training and distribution of child pornography." Id.

113.

His conduct was not aberrational or isolated.  He had been engaging in it

since he was approximately 12 years old.  His meticulously labeled  and organized

collection was divided into layers and layers of electronic folders and subfolders

evidencing "sustained systematic criminal behavior for a long period of time." Id.

110.  His collection was immense, close to 65,000 images,  so he really was not a

novice offender:

"So he may be a first time offender in the sense that he's never been caught or convicted, but by his own admission  he's been a repeat offender for at least 16 years."

Id.

She also urged the court to consider the acquitted conduct of the secret video recordings made by Mr. Wairi because it was indicative of a relevant breach of trust.  Those minor students had been entrusted to his care by their parents and guardians.  So while he was continuing his habitual viewing of child pornography he was simultaneously violating the trust of the parents and community by taking inappropriate and possibly sexually suggestive films of children similar in age to those victimized in his collection.  This violation of his caretaking role applied to his position as an elementary school teacher as well.  Id. 112.

The Defense Argument

The defense took the stage.  Counsel acknowledged the poignancy of the government's presentation, especially the impact statement of one of the living victims of  the abuse who attested to her ongoing victimization.  App. 115.  But he had dealt with many child pornographers over his long career both as a defense attorney and as a prosecutor.  App. 121.  From that experience he knew that all of them appeared to sincerely believe that the mere viewing of the image could not possibly harm the victim depicted.  Id. 122.   "Someone can actually believe that "This is just a fantasy world that is separate from my real world," and he lives in that world."  Id.   The court responded:

THE COURT:

> "But that doesn't palliate the culpability as Congress has drafted the laws, accepting that as true, absolutely accepting that as true as the subjective view of the offender, Congress takes a view more protective of the victims of child abuse and *it's my duty to*, given all the factors in sentencing, to *vindicate that view*, and those are the representatives of the people and what they've done makes good sense."

Id. 123.  (italics supplied).

In reply, the defense presented the court with the fundamental dilemma that needed

to be resolved by this sentencing.

Mr. Carney:         May I be candid?

THE COURT:        Yes.

Mr. Carney:         I agree with everything you said.  But I am trying to focus on [what] briefly, and then I will move on, is a very difficult question that I have faced in other cases and I face in this one.  The prosecutor paints Josh Wairi as one of the worst criminals of all time.  It's almost, um, Nazi concentration camp horrible, the person that I'm standing next to.  And the question that I ask is how does that square with the fundamentally good man that all the people knew Josh to be at a time while this was a secret?  The person who was generous in helping out in the community.  The person who would spend extra hours helping people.  Character letters talk about all the good things that he did and certainly the majority of his life was doing good things.  There was no suspicion ever once that he had been doing anything that would reflect this kind of child pornography fixation. [2]

So I ask, how does a fundamentally good man like this ever get involved in such a dark fixation? "

[2]  The character letters are reproduced at Supp. App. 55 et. seq.

App.  123-124.

Although counsel did not have a definitive answer, he suggested to the court that intensive sex offender treatment is the only way to not only answer the question why, but also to permit Josh to live in normal society upon his release from prison.

> "The only way that this answer will be found will be by the kind of very, very intense treatment ...that will drill down in the most difficult type of confrontational counseling...bringing him down to nothing before they can start to build him back up again."

Id. 124.

In his sentencing memorandum on behalf of the defendant counsel stated that the public would be adequately protected from any recidivism risk on defendant's release if he were placed in the kind of treatment program just described, which contained the elements specified in the psychosexual evaluation performed as an aid in sentencing.  App. 33.  The PSR itself proposed such post-release treatment as a special condition of supervised release.  Supp. App. 46.  It was imposed verbatim by the court in its final judgment.  Add. 4, ¶ 7.

In that memorandum defendant also asked the court to impose a sentence of five years in prison followed by ten years of supervised release during which time the defendant would have to participate in the kind of intensive sex offender treatment program described above.  He suggested that the combination of the five

- 14 -

year incarcerative term plus the community based sex treatment regimen would fulfill all the goals of sentencing contained in § 3553(a) while at the same time conforming to the parsimony principle underlying the sentencing process as a whole.  App. 20, 33-34.

The Law

" "[F]ailing to consider the § 3553(a) factors"  constitutes procedural error." United States v. Pulido, 566 F.3d 52, 64 (1st Cir. 2009)(citation omitted).  While a sentencing court is not required to address the factors "one by one in some sort of rote incantation when explicating its sentencing decision", United States v. Dixon, 449 F. 3d 194, 205 (1st Cir. 2006), when a defendant raises specific grounds for leniency based on his history or the circumstances of the offense the court is obligated to address those issues.  United States v. Scherrer, 444 F.3d 91, 97 (1st Cir. 2006)(en banc)(Lipez, J., concurring).  Here, a fair reading of the entire record, including his memorandum and the sentencing transcript, indicates that Mr. Wairi sufficiently raised as mitigation his amenability to treatment as a sex offender to warrant leniency in his sentence.

He appended a "psychosexual" evaluation in aid of sentencing authored by Leo D. Keating, LICSW, the clinical director of New England Forensic Associates (NEFA) and a recognized expert with "over 18 years experience in the diagnosis, assessment, and treatment of sexual offenders."   Supp. App. 73.  Mr. Keating

interviewed Josh at length and also administered industry-standard psychological and sexual interest tests, the Millon Clinical Multiaxial Inventory - III, and the Abel Assessment of Sexual Interest - 3.  Id. at 76.  Pertinent conclusions were that Josh does not have any major psychiatric illness or major thought or mood disorder and that he is likely not a fixated pedophile.  Id. 79, 80.  While he does demonstrate a deviant sexual interest in young boys, any arousal response he may have to them does not represent an ingrained sexual response to children but is a *conditioned* response to his viewing of pornographic images while deriving sexual self-gratification from them since his early adolescence.  Such response is not uncommon and in fact has affected a significant subgroup of individuals who began viewing child pornography from an early age.  Id. 80-81.

Mr. Keating concluded that Josh could be safely managed in a community setting if certain treatment conditions were closely adhered to.   Id. at 81.

The Court's Failure to Address the Issue

At the start of the sentencing hearing, the court announced that, "Mr. Wairi, this is a real argument here, I've read all the papers".  App. 94.  Later, just prior to hearing the sentencing arguments of the attorneys, he stated,  "Counsel will understand that I have read everything that's submitted both on behalf of the government and the defense and I've thoroughly read the presentence report."  Id. 105.

- 16 -

Defense counsel at the start of his sentencing presentation reminded the court of the points argued in his memorandum and asked it to take them into consideration:

> "I put all the considerations that I wanted your Honor to look at and think about in my memorandum and it's my practice not to go over them again orally with the court and I hope and know that your Honor understands it no less - - it doesn't lessen my advocacy that I don't repeat it, it's before your Honor"

App. 121.

This was sufficient notice to the court to require it to at least respond to Josh's request for a five year (mandatory) term of imprisonment followed by sustained participation in a rigorous sex offender treatment program aimed both at eradication of his deviant behavior and protection of the community from recidivism. Scherrer, supra, 444 F.3d at 97. But the court ignored the issue. It remained solely concerned with its *duty* to *vindicate* the congressional intent behind the child pornography statute. That intent has been criticized by many as resulting in inordinately harsh sentences not justified by empirical fact finding. See  App. 35-36 (citing articles and cases); see also  United States v. Stone, 575 F.3d 83, 90 (1st Cir. 2009)(not disputing that the child pornography guidelines were based on congressional  directives and not on the sentencing commission's typical empirical research).

A review of the totality of the circumstances involved in the sentencing does not permit any inference of thoughtful consideration of the proposal but only rejection.  There is not the slightest allusion to the possible role of sex offender treatment as an alternative to extended incarceration or any part thereof.  Mr. Keating's evaluation identified Josh as a viable candidate for the treatment. Counsel requested it as a viable compliment to a five year prison term, but notably not as a substitute for it.  But the court ignored the issue altogether.  That was procedurally unreasonable.

It was also plain error.  The mandate of Gall to consider meaningfully all the § 3553(a) factors, coupled with the court's complete avoidance of the topic at hand shows an obvious mistake.  That meets the first two requisites of the plain error test.  See supra at 10.  The public reputation of the justice system cannot but be diminished by the omission.  As to prejudice, it may be said that the scales tip at least ever so slightly in favor of a shorter sentence if a less punitive perspective were taken by the court.

The failure to impose a truly individualized sentence can also be procedurally unreasonable.  United States v. Flores-Machicote, 706 F.3d 16, 24 (1st Cir. 2013)("It is possible for a sentencing judge to focus too much on the community and too little on the individual and, thus, impose a sentence that cannot withstand the test of procedural reasonableness").  Accordingly, the defendant

respectfully requests the court to consider the following argument asserting a basis for a finding of substantive unreasonableness as applying equally in the context of procedural unreasonableness.

## B. Substantive Reasonableness.

Once a sentencing court has met its obligation to assiduously consider and, as needed, apply the factors mandated by § 3553(a) the ultimate decision on the penalty to ensue is largely a judgment call. Flores-Machicote, supra at 21. The result inevitably involves a good portion of subjectivity. What is a priority for one judge is not so for another. "[T]here is almost always a range of reasonable sentences for any given offense. . . . [T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014) (internal citations and quotation marks omitted). There is no single correct sentence in any given case. Id. The issue must be viewed in the "totality of the circumstances" of the case. Gall, supra 552 U.S. at 51. See also United States v. King, 741 F.3d 305, 308 (1st Cir. 2014)(same). The rationale for a sentence is gleaned from the transcript of the sentencing hearing, the court's written statement of reasons and the points argued by the parties. United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006). Notwithstanding the described framework, the overarching principle in federal

sentencing, since <u>Gall</u> reminded us of it in 2007, is the mandate for truly

"individualized" sentencing:

> "for the sentencing judge to consider every convicted person as an individual
> and every case as a unique study in the human failings that sometimes
> mitigate, sometimes magnify, the crime and the punishment to ensue."

552 U.S. at 51.

A close review of the sentencing transcript in this case reveals a disturbing lack of

compliance with this fundamental principle.

After pronouncing the sentence the court explained its rationale.  It was

appalled by the nature of Josh's offense.  No one could find fault with his

indignation:

> "The offenses of which you stand convicted, you seem now to
> understand it, are a most hideous form of child abuse.  We have made a
> mistake in our language in calling it "child pornography", it is not, it is
> "child obscenity," it is the visual depiction of actual children actually being
> abused in the most vile, disgusting, and abusive ways.  It is an
> extraordinarily serious crime.  As carefully defined by the Congress, it is no
> infringement on the First Amendment, it is an attempt, a careful attempt
> trying to preserve children from sexual predators and among those predators,
> whether they engage in the abuse or not, are those who seek out and possess
> these visual depictions.
> ...
>
> Now, this case is an extraordinarily troubling case.  ...
>
> You are a serial offender year after year after year,  ...
>
> this is one of the worst -- and I have no equivocation in saying it, one of the
> worst offenses this Court has seen of this type."

Supp. App.  83 - 85.

The harshness of this view is understandable.  No one can deny that the vulnerable victims of this kind of child abuse deserve far more empathy than the perpetrators.  Nor can the need for deterrence which is so strongly implied in this explanation  be gainsaid.  The problem is the lack of proportionality which it manifests.  This may be seen a concomitant of the requirement for truly individualized sentencing.  It is an understatement to say that there was little of proportionality in the disposition.  In fact, there was none.

For example, Josh accepted his culpability as soon as law enforcement arrived at his door on April 17, 2014 to execute the search warrant for suspected child pornography.  He described in detail the nature and extent of his illicit and disturbing collection of  images.  He was remorseful.  That remorse continued during the pendency of the case until and including the trial itself one year later.  It is true that the court granted him a three level reduction in his guideline range in spite of his having gone to trial.  That was appropriate under the circumstances described by the court.  App.  97 - 104.  But it does not appear that it factored at all into the determination of the final sentence.  This notion is supported by the fact that the imposition of a 144 month prison sentence for a first time offender without any prior arrests was significantly above the average sentences tabulated by the court nationally, within this circuit and district, and even his own experience.  App.  96 - 97.

In addition, it seems the court in a sense felt *compelled* to impose the extreme sentence it selected.  As noted above, regarding the child pornography statutes, he stated that he owed a *duty* to *vindicate* the intent of congress and the will of the people embodied therein.  But that duty cannot be so one-sided.  It is of the essence of judicial decision-making in the criminal context to filter a sentencing decision through the crucible of a "unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  <u>Gall</u> <u>supra</u>  552 U.S. at 51.  That balancing exercise was not performed in this case.

The court's sense of revulsion at the sheer depravity of the crime itself figuratively leaps off the transcript page:  "a most hideous form of child abuse", "child obscenity" not pornography, "the visual depiction of actual children actually being abused in the most vile, disgusting, and abusive ways, "an extraordinarily serious crime".  Supp. App.  83 - 84.  Again, the absolutely reprehensible and un-redeeming nature of child pornography is unequivocally acknowledged by Josh. But it appears that the court was so blinded by this aspect of the case that it lost sight of its obligation to sentence the whole individual.  As in <u>United States v. Olhovsky</u>, 562 F.3d 530, 549 (3d Cir. 2009), "[I]t is exceedingly difficult to review this sentencing transcript without becoming convinced that the district court was so appalled by the offense that it lost sight of the offender."  In <u>Olhovsky</u> the third

circuit found that, as in the instant case, the sentencing court ignored mitigating

evidence of a psychological evaluation that concluded, *inter alia*, that the

defendant was not "a fixated sexual pedophile " and that the risk of recidivism was

relatively low.  Compare,

> "While I cannot represent to you that Mr. Olhovsky will never behave
> inappropriately in the future (none of us can predict the future with
> certainty), I do hope that Mr. Olhovsky can be viewed much more as a
> juvenile rather than adult sexual offender.  I do not view him as being a
> fixated pedophile or incapable or lacking desire in being with age-
> appropriate consenting females."
>
> Olhovsky, 562 F.3d at 535,

with,

> "The fact that he shows interest in adults, suggests that he is not a fixated
> pedophile as he is **not** attracted only to children.  Supp. App.  80.  ...
> It is my professional opinion that if the following treatment recommendations
> are closely adhered to, Mr. Wairi could be safely managed in the community.
>
> 1. Mr. Wairi should participate in a comprehensive outpatient
>    sexual offender treatment program.
> 2. Mr. wairi should participate in behavioral therapy to help
>    him understand and control his deviant sexual interests.
> 3. Through psychological treatment Mr. Wairi should further
>    investigate his own sexual identity.
> 4. Mr. Wairi should have no unsupervised access to the
>    Internet.
> 5. Mr. Wairi should have regular polygraph tests to ensure that
>    he is not engaging in inappropriate sexual behaviors."
>
> Supp. App.  81 (emphasis in the original).

This conclusion is further supported by the court's reference to a recent law review

article as another basis for its sentencing decision:

"I've been very impressed, and I want to put it on the record, by a law review article that recently came out, Laura E. Avery, "The Categorical Failure of Child Pornography Law", 21 Widener Law Review 51, in this year, 2015. [3] Ms. Avery points out that "While the Congress has been very careful in the language it has used in the laws restricting this type of child abuse, she faults courts for being less than careful and courts twisting the language because the actual abuse is so horrific to reach conduct where the language simply will not support that result." This jury saw through that." "

Supp. App. 84 (internal quotes in original).

On the one hand this was apparently a reference to the fact that the jury had acquitted defendant on the production charges based largely on its not accepting the government's labeling of the videos as depicting "lascivious" content . Add. 14 - 16. On the other hand, this statement perhaps gives some insight into the court's thought processes in arriving at its decision about the sentence.

An admittedly less than studied review of the article in question seems to show that it is primarily about what the title denotes. That is, it is a criticism of the failure of the Supreme Court to construe and define the child pornography exception to the First Amendment right of freedom of expression as clearly and as narrowly as it has in other categories of prohibited speech such as incitement and obscenity. Avery, at 51 and 94. In making that criticism the author does not in any way dwell on the actual abuse [depicted in child pornography] being so horrific that courts cannot but resort to twisted shorthand language or euphemisms.

---

[3] Laura E. Avery, "The Categorical Failure of Child Pornography Law", 21 Widener Law Review 51 ), Hereafter, "Avery, at  page #. Most recently accessed at, http://widenerlawreview.org/files/2015/02/8-Avery-1.pdf.

On the contrary, she minimizes and even questions the validity of the "haunting"
theory of perpetual re-victimization suffered by the minor children depicted in the
pornographic imagery.  Avery, 79 ("This "permanent record" rationale is one of the
most puzzling aspects of child pornography law.") and 81 ("As we have seen, the
First Amendment typically requires proof of a serious harm flowing from speech
for the speech itself to be criminalized.  In the realm of haunting, there may be no
harm at all.").  Yet the court's take-away in this instance is arguably to emphasize
the horrific nature of  child pornography in general.  Mr. Wairi does not dispute
that characterization because he has come to understand that the victims do
continue to suffer repeated anguish into adulthood by the perpetual re-viewing.
See allocution.  App. 129.  But he does not agree that it can be effectively the sole
basis for the very long, almost unprecedented, term of imprisonment he received in
this case.

The court's somewhat idiosyncratic or perhaps eccentric commentary on the
article reinforces Mr. Wairi's contention that he did not receive individualized
sentencing in this case.  Just as with the failure to address the issue of the
availability of  a treatment component in mitigation of  a very long prison term, the
court considered only the offense before it and not the offender.

The result is a violation of the requirement of substantive reasonableness in
sentencing.  The rationale gleaned from the record is not plausible.  The only

explanation is that the court did not engage in individualized sentencing.  It was so appalled by the depravity of the offense that it could not see the deeply flawed but redeemable man before it.  This was reversible error.

For the same reasons expressed in the plain error summary at 18, <u>supra</u>, this too was plain error.

## **<u>Conclusion</u>**

For the reasons stated above, the defendant, Josh A. Wairi, respectfully prays that the judgment in this case be vacated and the case remanded to the district court for re-sentencing before a different district  judge.


Respectfully submitted,

JOSH A. WAIRI,

By his attorney,

<u>/s/Raymond E. Gillespie</u>
Raymond E. Gillespie, Esquire
Circuit No. 12042, B.B.O. #192300
875 Massachusetts Ave Suite 32
Cambridge, MA  02139
(617) 661-3222
rgillespie1@prodigy.net

Certificate of Compliance

I hereby certify that the foregoing brief complies with Fed.R.App.P. 32(a)(7)(B) in that it contains 5,271  words in 14 point, proportionally spaced typeface (Times New Roman):

/s/Raymond E. Gillespie
Raymond E. Gillespie

Certificate  of Service

I hereby certify that a copy of the original of this document was electronically served on all parties registered to receive notice through the Electronic Case Management system in this matter as of August 5, 2016 and in particular on Dina Michael Chaitowitz, Esquire, and Suzanne Sullivan Jacobus, Esquire, Assistant United States Attorneys, 9200 John Joseph Moakley Courthouse, One Courthouse Way, Boston, MA 022100, on the date indicated below:

Dated:  August 5, 2016                    /s/Raymond E. Gillespie
                                          Raymond E. Gillespie

## Addendum

Judgment, No. 14-cr-10143-WGY, Oct. 2, 2015......................................................1

Jury Charge, May 1, 2015 [excerpt].............................. .......................................13

18 U.S.C. § 3553.................................................................................................17

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
Sheet 1 - D. Massachusetts - 10/05

# UNITED STATES DISTRICT COURT
## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**V.**<br><br>**JOSH WAIRI** | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number: **1: 14 CR 10143 - 001 - WGY**<br>USM Number: 96146-038<br><br>J.W. Carney Jr. |

Defendant's Attorney

☑ Additional documents attached

Transcript Excerpt of Sentencing Hearing

☐

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)   **1s, 5s**
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

Additional Counts - See continuation page ☐

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18USC §2252A(a)(1) | Transportation of Child Pornography | 04/17/15 | 1s |
| 18USC §2252A(a)(5)(B) | Possession of Child Pornography | 04/17/15 | 5s |

The defendant is sentenced as provided in pages 2 through ___12___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☑ The defendant has been found not guilty on count(s)   2s-4s

☑ Count(s) original indictment ☑ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

09/14/15
Date of Imposition of Judgment

*William G. Young*
Signature of Judge

The Honorable William G. Young
Judge, U.S. District Court
Name and Title of Judge

*October 2, 2015*
Date

## ADDENDUM 1

⬚AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 2 - D. Massachusetts - 10/05

| | |
|---|---|
| DEFENDANT: **JOSH WAIRI** | Judgment — Page  2  of  12 |
| CASE NUMBER: **1: 14 CR 10143  - 001  - WGY** | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:    144    month(s)

on each count.  Each count to run concurrently with each other.
The defendant shall receive credit for time served from 4/17/2014 to present.

☑ The court makes the following recommendations to the Bureau of Prisons:

The Court recommends that the defendant be designated in a facility that provides psychiatric care and sex offender treatment.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m.   ☐ p.m.   on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**ADDENDUM  2**

**3**

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 - D. Massachusetts - 10/05

| | | Judgment—Page | 3 | of | 12 |

DEFENDANT:    **JOSH WAIRI**
CASE NUMBER:   **1: 14 CR 10143 - 001 - WGY**

## SUPERVISED RELEASE

☑ **See continuation page**

Upon release from imprisonment, the defendant shall be on supervised release for a term of :     **96**   month(s)

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 104 tests per year, as directed by the probation officer.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

## ADDENDUM 3

Case 1:15-mj-02166 Document 1-1 Filed 10/02/15 Page 4 of 12
Case 1:14-cr-10143-WGY Document 243 Filed 10/02/15 Page 4 of 12    Entry ID: 6023081
4
Sheet 4A - Continuation Page - Supervised Release/Probation -10/05

| DEFENDANT: **JOSH WAIRI** | Judgment—Page __4__ of __12__ |
| CASE NUMBER: **1: 14 CR 10143  - 001 - WGY** | |

## ADDITIONAL☑ SUPERVISED RELEASE☐PROBATION TERMS

1. The defendant is prohibited from possessing a firearm, destructive device, or other dangerous weapon.

2. The defendant shall not have any contact, direct or indirect, with any of the identified victims.

3. The defendant is prohibited from engaging in an occupation, business, or profession that would require or enable have contact with children.

4. The defendant is to participate in a mental health treatment program as directed by the Probation Office. The defendant shall be required to contribute to the costs of services for such treatment based on the ability to pay or availability of third-party payment.

5. The defendant shall take all medications as directed by his/her mental health treatment provider.

## Continuation of Conditions of ☑Supervised Release ☐ Probation

6. Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, the defendant shall register as a sex offender not later than 3 business days (from release or sentencing, if granted probation). The defendant will keep the registration current, in each jurisdiction where the defendant resides, is employed or is a student. The defendant shall, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which the defendant is registered and inform that jurisdiction of all changes in the information. Failure to do so may not only be a violation of this condition but also a new federal offense punishable by up to 10 years imprisonment. In addition, the defendant must read and sign the Offender Notice and Acknowledgment of Duty to Register as a Sex Offender per the Adam Walsh Child Protection And Safety Act of 2006 form.

7. The defendant shall participate in a sexual specific evaluation or sex offender specific treatment, conducted by a sex offender treatment provider, as directed and approved by the Probation Office. The treatment provider shall be trained and experienced in the treatment of sexual deviancy, and follow the guideline practices established by the Association for the Treatment of Sexual Abusers (ATSA). The sexual specific evaluation may include psychological and physiological testing which may include polygraph, ABLE screening, and other types of testing, as approved by the Probation Office. The defendant shall disclose all previous sex offender or mental health evaluations to the treatment provider. The defendant shall also contribute to the costs of the evaluation, according to his/her ability, as determined by the Probation Office. When submitting to a polygraph exam, the defendant does not waive his or her Fifth Amendment rights, and

**ADDENDUM  4**

| DEFENDANT: **JOSH WAIRI** | Judgment—Page _____5_____ of ____12____ |
|---|---|
| CASE NUMBER: **1: 14 CR 10143 - 001 - WGY** | |

## ADDITIONAL ☑ SUPERVISED RELEASE ☐ PROBATION TERMS

the defendant's exercise of such rights will not give rise to a violation proceeding. The results of the polygraph examinations may not be used as evidence in Court to prove that a violation of community supervision has occurred, but may be considered in a hearing to modify release conditions and/or could initiate a separate investigation.

8. The defendant shall not possess or use a computer, internet-capable device, or similar electronic device or have access to any online service without the prior approval of the Probation Office.

9. The defendant shall allow the installation of a computer and internet monitoring program and/or identify computer systems, internet-capable devices, and similar memory and electronic devices to which the defendant has access (except a computer owned by his employer and not located in his residence). The program(s) used will be designed to identify, for the probation office, the viewing, downloading, uploading, transmitting, or otherwise using any images or content of a sexual or otherwise inappropriate nature. The defendant shall contribute to the cost of such monitoring services, based on the defendant's ability to pay, as deemed appropriate by the Probation Office.

## Continuation of Conditions of ☑ Supervised Release ☐ Probation

The defendant shall not attempt to remove or otherwise defeat such systems, and shall allow the Probation Office to examine such computer and receive data from it at any reasonable time.

10. The defendant shall advise anyone in his/her household that any computer in the household may be subject to computer monitoring.

11. The defendant is not to possess or use a computer, internet-capable device, or similar electronic device without the prior permission of the Probation Office. Any device previously mentioned should not be used to access child pornography or to communicate with any individual or group for the purpose of promoting sexual relations with children. The defendant is prohibited from entering chat rooms, to send or receive "instant messages," or to send or receive email with attached electronic files through any electronic medium unless previously approved by the Probation Office. The defendant shall not utilize any sex-related telephone services, websites, or electronic bulletin boards.

12. The defendant shall disclose all account information relative to internet access, social networking, and email, including user names and passwords, to the Probation Office. The defendant shall also, if requested, provide a list of all software/hardware on his/her computer, as well as telephone, cable, or internet service provider billing records and any other information deemed necessary by the Probation Office to monitor the defendant's computer usage.

**ADDENDUM 5**

| | |
|---|---|
| DEFENDANT: **JOSH WAIRI** | Judgment—Page ___6___ of ___12___ |
| CASE NUMBER: **1: 14 CR 10143 - 001 - WGY** | |

## ADDITIONAL ☑ SUPERVISED RELEASE ☐ PROBATION TERMS

13. The defendant shall provide the probation officer with access to any requested financial information for purposes of monitoring their compliance with the imposed computer access/monitoring conditions, including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills.

14. The defendant shall have no direct or indirect contact with children under the age of 18, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense, and who has been approved by the Probation Office. The defendant shall not have any direct or indirect contact with the victim. Should the defendant have incidental contact with a child or the victim, the defendant is required to immediately remove himself from the situation and notify his/her probation officer.

## Continuation of Conditions of ☑ Supervised Release ☐ Probation

15. The defendant shall consent to third party disclosure to any employer or potential employer concerning any computer-related restrictions that are imposed upon him, unless excused by the probation officer. The defendant shall not be employed in any capacity that may cause the defendant to come in direct contact with children, except under circumstances approved in advance by the supervising probation officer. In addition, the defendant shall not participate in any volunteer activity that may cause the defendant to come into direct contact with children, except under circumstances approved in advance by the defendant's probation officer. Contact is defined as any transaction occurring face to face, over the telephone, via mail, over the internet, and any third party communication.

16. Prior to accepting any form of employment, the defendant shall seek the approval of the Probation Office, in order to allow the Probation Office the opportunity to assess the level of risk to the community the defendant may pose if employed in a particular capacity.

**ADDENDUM 6**

| | | |
|---|---|---|
| DEFENDANT: | **JOSH WAIRI** | Judgment — Page ___7___ of ___12___ |
| CASE NUMBER: | **1: 14  CR  10143   - 001  - WGY** | |

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $          $200.00 | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

☐ See Continuation Page

| **TOTALS** | $          $0.00 | $          $0.00 |
|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**ADDENDUM  7**

| | |
|---|---|
| DEFENDANT: **JOSH WAIRI** | Judgment — Page ___8___ of ___12___ |
| CASE NUMBER: **1: 14 CR 10143 - 001 - WGY** | |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A** [X] Lump sum payment of $ $200.00    due immediately, balance due

       [ ] not later than _____ , or
       [ ] in accordance   [ ] C,   [ ] D,   [ ] E, or   [ ] F below; or

**B** [ ] Payment to begin immediately (may be combined with   [ ] C,   [ ] D, or   [ ] F below); or

**C** [ ] Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** [ ] Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
     term of supervision; or

**E** [ ] Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
     imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** [ ] Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

[ ] Joint and Several            [ ] See Continuation Page

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

[ ] The defendant shall pay the cost of prosecution.

[ ] The defendant shall pay the following court cost(s):

[X] The defendant shall forfeit the defendant's interest in the following property to the United States:

     As prayed for by the government. See docket entry #113.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

## ADDENDUM 8

| | |
|---|---|
| DEFENDANT: | **JOSH WAIRI** |
| CASE NUMBER: | **1: 14 CR 10143 - 001 - WGY** |
| DISTRICT: | **MASSACHUSETTS** |

Judgment — Page  9  of  12

# STATEMENT OF REASONS

**I    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT**

A ☐    **The court adopts the presentence investigation report without change.**

B ☑    **The court adopts the presentence investigation report with the following changes.**
(Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report, if applicable.)
(Use Section VIII if necessary.)

   1    ☑    **Chapter Two of the U.S.S.G. Manual** determinations by court (including changes to base offense level, or specific offense characteristics):

   2    ☐    **Chapter Three of the U.S.S.G. Manual** determinations by court (including changes to victim-related adjustments, role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

   3    ☐    **Chapter Four of the U.S.S.G. Manual** determinations by court (including changes to criminal history category or scores, career offender, or criminal livelihood determinations):

   4    ☐    **Additional Comments or Findings** (including comments or factual findings concerning certain information in the presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation, or programming decisions):

C ☐    **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**

**II    COURT FINDING ON MANDATORY MINIMUM SENTENCE** (Check all that apply.)

A ☑    No count of conviction carries a mandatory minimum sentence.

B ☐    Mandatory minimum sentence imposed.

C ☐    One or more counts of conviction alleged in the indictment carry a mandatory minimum term of imprisonment, but the sentence imposed is below a mandatory minimum term because the court has determined that the mandatory minimum does not apply based on

   ☐    findings of fact in this case
   ☐    substantial assistance (18 U.S.C. § 3553(e))
   ☐    the statutory safety valve (18 U.S.C. § 3553(f))

**III    COURT DETERMINATION OF ADVISORY GUIDELINE RANGE (BEFORE DEPARTURES):**

Total Offense Level:    33
Criminal History Category:    I
Imprisonment Range:    135    to    168    months
Supervised Release Range:    5    to    999    years
Fine Range: $    17,500    to  $    175,000
☑    Fine waived or below the guideline range because of inability to pay.

**ADDENDUM    9**

DEFENDANT: **JOSH WAIRI**                                    Judgment — Page  10  of  12
CASE NUMBER: **1: 14 CR 10143  - 001 - WGY**
DISTRICT:      **MASSACHUSETTS**

# STATEMENT OF REASONS

**IV   ADVISORY GUIDELINE SENTENCING DETERMINATION** (Check only one.)

A  ☐   The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart.

B  ☑   The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons.
        (Use Section VIII if necessary.)

C  ☐   The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual.
        (Also complete Section V.)

D  ☐   The court imposed a sentence outside the advisory sentencing guideline system.  (Also complete Section VI.)

**V   DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** (If applicable.)

A  **The sentence imposed departs** (Check only one.):
       ☐  below the advisory guideline range
       ☐  above the advisory guideline range

B  **Departure based on** (Check all that apply.):

   1      **Plea Agreement** (Check all that apply and check reason(s) below.):
          ☐  5K1.1 plea agreement based on the defendant's substantial assistance
          ☐  5K3.1 plea agreement based on Early Disposition or "Fast-track" Program
          ☐  binding plea agreement for departure accepted by the court
          ☐  plea agreement for departure, which the court finds to be reasonable
          ☐  plea agreement that states that the government will not oppose a defense departure motion.

   2      **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
          ☐  5K1.1 government motion based on the defendant's substantial assistance
          ☐  5K3.1 government motion based on Early Disposition or "Fast-track" program
          ☐  government motion for departure
          ☐  defense motion for departure to which the government did not object
          ☐  defense motion for departure to which the government objected

   3      **Other**
          ☐  Other than a plea agreement or motion by the parties for departure (Check reason(s) below.):

C  **Reason(s) for Departure** (Check all that apply other than 5K1.1 or 5K3.1.)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 4A1.3 | Criminal History Inadequacy | ☐ 5K2.1 | Death | ☐ 5K2.11 | Lesser Harm |
| ☐ 5H1.1 | Age | ☐ 5K2.2 | Physical Injury | ☐ 5K2.12 | Coercion and Duress |
| ☐ 5H1.2 | Education and Vocational Skills | ☐ 5K2.3 | Extreme Psychological Injury | ☐ 5K2.13 | Diminished Capacity |
| ☐ 5H1.3 | Mental and Emotional Condition | ☐ 5K2.4 | Abduction or Unlawful Restraint | ☐ 5K2.14 | Public Welfare |
| ☐ 5H1.4 | Physical Condition | ☐ 5K2.5 | Property Damage or Loss | ☐ 5K2.16 | Voluntary Disclosure of Offense |
| ☐ 5H1.5 | Employment Record | ☐ 5K2.6 | Weapon or Dangerous Weapon | ☐ 5K2.17 | High-Capacity, Semiautomatic Weapon |
| ☐ 5H1.6 | Family Ties and Responsibilities | ☐ 5K2.7 | Disruption of Government Function | ☐ 5K2.18 | Violent Street Gang |
| ☐ 5H1.11 | Military Record, Charitable Service, Good Works | ☐ 5K2.8 | Extreme Conduct | ☐ 5K2.20 | Aberrant Behavior |
| | | ☐ 5K2.9 | Criminal Purpose | ☐ 5K2.21 | Dismissed and Uncharged Conduct |
| ☐ 5K2.0 | Aggravating or Mitigating Circumstances | ☐ 5K2.10 | Victim's Conduct | ☐ 5K2.22 | Age or Health of Sex Offenders |
| | | | | ☐ 5K2.23 | Discharged Terms of Imprisonment |
| | | | | ☐ | Other guideline basis (e.g., 2B1.1 commentary) |

D  **Explain the facts justifying the departure.**  (Use Section VIII if necessary.)

**ADDENDUM   10**

| DEFENDANT: | **JOSH WAIRI** | Judgment — Page 11 of 12 |
|---|---|---|
| CASE NUMBER: | 1: 14 CR 10143 - 001 - WGY | |
| DISTRICT: | **MASSACHUSETTS** | |

## STATEMENT OF REASONS

**VI   COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM**
(Check all that apply.)

A     **The sentence imposed is** (Check only one.):
☐ below the advisory guideline range
☐ above the advisory guideline range

B     **Sentence imposed pursuant to** (Check all that apply.):

1     **Plea Agreement** (Check all that apply and check reason(s) below.):
☐ binding plea agreement for a sentence outside the advisory guideline system accepted by the court
☐ plea agreement for a sentence outside the advisory guideline system, which the court finds to be reasonable
☐ plea agreement that states that the government will not oppose a defense motion to the court to sentence outside the advisory guideline system

2     **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
☐ government motion for a sentence outside of the advisory guideline system
☐ defense motion for a sentence outside of the advisory guideline system to which the government did not object
☐ defense motion for a sentence outside of the advisory guideline system to which the government objected

3     **Other**
☐ Other than a plea agreement or motion by the parties for a sentence outside of the advisory guideline system (Check reason(s) below.):

C     **Reason(s) for Sentence Outside the Advisory Guideline System** (Check all that apply.)

☐ the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)
☐ to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))
☐ to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))
☐ to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))
☐ to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D))
☐ to avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6))
☐ to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

D     **Explain the facts justifying a sentence outside the advisory guideline system.** (Use Section VIII if necessary.)

**ADDENDUM   11**

| | |
|---|---|
| DEFENDANT: | **JOSH WAIRI** |
| CASE NUMBER: | **1: 14 CR 10143 - 001 - WGY** |
| DISTRICT: | **MASSACHUSETTS** |

Judgment — Page 12 of 12

# STATEMENT OF REASONS

## VII COURT DETERMINATIONS OF RESTITUTION

A  ☑  Restitution Not Applicable.

B  Total Amount of Restitution: _____

C  Restitution not ordered (Check only one.):

   1  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

   2  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

   3  ☐  For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

   4  ☐  Restitution is not ordered for other reasons.  (Explain.)

D  ☐  Partial restitution is ordered for these reasons (18 U.S.C. § 3553(c)):

## VIII ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE (If applicable.)

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

| | |
|---|---|
| Defendant's Soc. Sec. No.: | 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 |
| Defendant's Date of Birth: | 0/0/0000 |
| Defendant's Residence Address: | n/a |
| Defendant's Mailing Address: | n/a |

Date of Imposition of Judgment
09/14/15

*William G. Young*
Signature of Judge
The Honorable William G. Young    Judge, U.S. District Co
Name and Title of Judge
Date Signed *October 2, 2015*

**ADDENDUM 12**

Case: 15-2166    Document: 00117038828    Page: 41    Date Filed: 08/05/2016    Entry ID: 6023081
Case 1:14-cr-10143-WGY    Document 106    Filed 07/14/15    Page 1 of 33

1

```
 1                    UNITED STATES DISTRICT COURT

 2                    DISTRICT OF MASSACHUSETTS

 3                              No. 1:14-cr-10143-WGY

 4

 5    UNITED STATES OF AMERICA

 6

 7    vs.

 8

 9    JOSH A. WAIRI

10

11
                              * * * * * * * *
12

13                        For Jury Trial Before:
                          Judge William G. Young
14

15                        EXCERPT TRANSCRIPT:
                             Jury Charge
16

17                        United States District Court
                          District of Massachusetts (Boston)
18                        One Courthouse Way
                          Boston, Massachusetts 02210
19                        May 1, 2015

20
                              * * * * * * *
21

22            REPORTER: RICHARD H. ROMANOW, RPR
                        Official Court Reporter
23                    United States District Court
              One Courthouse Way, Room 5510, Boston, MA 02210
24                        bulldog@richromanow.com

25
```

**ADDENDUM   13**

Case: 15-2166    Document: 00117038828    Page: 42    Date Filed: 08/05/2016    Entry ID: 6023081
Case 1:14-cr-10143-WGY  Document 106  Filed 07/14/15  Page 24 of 33

24

1    child pornography charge is not a peeping-Tom statute.
2    Various states have peeping-Tom statutes.  That's not
3    charged here.  Don't consider that.  You see, to film
4    someone, adult or child, unbeknownst to them, in a
5    shower, nude, and they don't know it, that's a pretty
6    extreme invasion of their privacy and there's laws that
7    deal with that.  Those laws are not involved here.  This
8    is a law and what the government charges here is
9    production of child pornography.

10        So the first thing you have to keep in mind is
11    that this statute requires more than mere nudity.
12    Nakedness of a minor, standing alone, is not enough to
13    render a photo lascivious.  And so -- and what does
14    "lascivious" mean?  The standard has to be objective.
15    And by "objective" I mean we're not concerning ourselves
16    with whether it's lascivious to Mr. Wairi, what's going
17    on in his mind.

18        In one of the cases one of my appellate colleagues
19    explained that some people have quirks and they would
20    think a Sears catalog was lascivious, but that doesn't
21    make it lascivious.  We've got to understand what
22    "lascivious" means because when Congress used that word
23    that word has to have some actual practical meaning as
24    we review evidence in specific cases.  So all I can do
25    is give you some guidance.

**ADDENDUM 14**

Case: 15-2166   Document: 00117038828   Page: 43   Date Filed: 08/05/2016   Entry ID: 6023081
**15**   Case 1:14-cr-10143-WGY   Document 106   Filed 07/14/15   Page 25 of 33

25

1         Whether what was filmed here is the minor engaging

2  in sexually explicit conduct, which in this case would

3  mean and would require lascivious exhibition of the

4  genitals or pubic area?  Lascivious, the courts say, is

5  a commonsensical term.  You doubtless have in mind a

6  definition of the term.  You're not permitted now to go

7  look up a definition, but we think the jury, the people,

8  understand what "lascivious" means.  But I can give you

9  some guidance.

10       This guidance is not -- these are not the only

11  factors that you can consider, there may be other

12  factors.  You're the jury in this case.  It's not that

13  all of these factors have to be present, but here are

14  factors that the courts higher than this one have

15  considered in grappling with this issue of whether an

16  visual depiction is lascivious.

17       Whether the focal point of the visual depiction is

18  on the child's genitals or pubic area?  Whether the

19  setting of the visual depiction is sexually suggestive,

20  that is in a place or pose generally associated with

21  sexual activity?  Whether the child is depicted in an

22  unnatural pose or in inappropriate attire considering

23  the age of the child?  Whether the child is fully or

24  partially clothed or nude?  Whether the visual depiction

25  suggests sexual coyness or a willingness to engage in

**ADDENDUM 15**

Case: 15-2166   Document: 00117038828   Page: 44   Date Filed: 08/05/2016   Entry ID: 6023081
     16   Case 1:14-cr-10143-WGY   Document 106   Filed 07/14/15   Page 26 of 33

26

 1   sexual activity?  And last but not least -- and there

 2   can be other things, it's up to you, but in this list

 3   last, whether the visual depiction is intended or

 4   designed to elicit a sexual response in the viewer?

 5          The analysis is qualitative, that is you take all

 6   the circumstances, no single factor dominates, and a

 7   visual depiction need not involve all of these factors.

 8          So that's left to you, with that guidance.  And it

 9   may be that you would find that there is a reasonable

10   doubt about whether in fact this constitutes, as

11   Congress -- and you have to follow what Congress has

12   passed here, what Congress has made criminal, that you

13   have a reasonable doubt about whether what in fact

14   happened here, what you think happened here, violated

15   that statute of producing child pornography.  If so, as

16   to Questions 3 -- and it could be you think it is as to

17   one of the videos, but not as to another and the like,

18   that's left to you, keep each one of them separately,

19   but I'll take my Question 3, Count 2 as the example.

20          So suppose in Count 2 you don't think that the

21   crime was actually accomplished, given the definitions,

22   given the guidance that I've explained to you, well,

23   then the government says, "Well, at least he attempted

24   to do it."  And so if you find as to Question 2 --

25   Question 3, I'm sorry, Count 2, if you find him not

**ADDENDUM  16**

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).*

**TITLE 18 - CRIMES AND CRIMINAL PROCEDURE**
**PART II - CRIMINAL PROCEDURE**
**CHAPTER 227 - SENTENCES**
**SUBCHAPTER A - GENERAL PROVISIONS**

### § 3553. Imposition of a sentence

(a) **Factors To Be Considered in Imposing a Sentence.—** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and

(ii) that, except as provided in section 3742 (g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994 (a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994 (a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and

(B) that, except as provided in section 3742 (g), is in effect on the date the defendant is sentenced.[1]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

(b) **Application of Guidelines in Imposing a Sentence.—**

(1) **In general.—** Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

**(2)  Child crimes and sexual offenses.—**

**(A)** [2] Sentencing.—In sentencing a defendant convicted of an offense under section 1201 involving a minor victim, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless—

**(i)**  the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described;

**(ii)**  the court finds that there exists a mitigating circumstance of a kind or to a degree, that—

**(I)**  has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994 (a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;

**(II)**  has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and

**(III)**  should result in a sentence different from that described; or

**(iii)**  the court finds, on motion of the Government, that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense and that this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence lower than that described.

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, together with any amendments to such guidelines or policy statements by act of Congress.

**(c)  Statement of Reasons for Imposing a Sentence.—**  The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—

**(1)**  is of the kind, and within the range, described in subsection (a)(4), and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or

**(2)**  is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in a statement of reasons form issued under section 994 (w)(1)(B) of title 28, except to the extent that the court relies upon statements received in camera in accordance with Federal Rule

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

of Criminal Procedure 32. In the event that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32 the court shall state that such statements were so received and that it relied upon the content of such statements.

If the court does not order restitution, or orders only partial restitution, the court shall include in the statement the reason therefor. The court shall provide a transcription or other appropriate public record of the court's statement of reasons, together with the order of judgment and commitment, to the Probation System and to the Sentencing Commission,,[3] and, if the sentence includes a term of imprisonment, to the Bureau of Prisons.

**(d) Presentence Procedure for an Order of Notice.—** Prior to imposing an order of notice pursuant to section 3555, the court shall give notice to the defendant and the Government that it is considering imposing such an order. Upon motion of the defendant or the Government, or on its own motion, the court shall—

    **(1)** permit the defendant and the Government to submit affidavits and written memoranda addressing matters relevant to the imposition of such an order;

    **(2)** afford counsel an opportunity in open court to address orally the appropriateness of the imposition of such an order; and

    **(3)** include in its statement of reasons pursuant to subsection (c) specific reasons underlying its determinations regarding the nature of such an order.

Upon motion of the defendant or the Government, or on its own motion, the court may in its discretion employ any additional procedures that it concludes will not unduly complicate or prolong the sentencing process.

**(e) Limited Authority To Impose a Sentence Below a Statutory Minimum.—** Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

**(f) Limitation on Applicability of Statutory Minimums in Certain Cases.—** Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—

    **(1)** the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

    **(2)** the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

    **(3)** the offense did not result in death or serious bodily injury to any person;

    **(4)** the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

    **(5)** not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

*Footnotes*

[1] So in original. The period probably should be a semicolon.

[2] So in original. No subpar. (B) has been enacted.

[3] So in original.

(Added Pub. L. 98–473, title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1989; amended Pub. L. 99–570, title I, § 1007(a), Oct. 27, 1986, 100 Stat. 3207–7; Pub. L. 99–646, §§ 8(a), 9 (a), 80 (a), 81 (a), Nov. 10, 1986, 100 Stat. 3593, 3619; Pub. L. 100–182, §§ 3, 16 (a), 17, Dec. 7, 1987, 101 Stat. 1266, 1269, 1270; Pub. L. 100–690, title VII, § 7102, Nov. 18, 1988, 102 Stat. 4416; Pub. L. 103–322, title VIII, § 80001(a), title XXVIII, § 280001, Sept. 13, 1994, 108 Stat. 1985, 2095; Pub. L. 104–294, title VI, §§ 601(b)(5), (6), (h), Oct. 11, 1996, 110 Stat. 3499, 3500; Pub. L. 107–273, div. B, title IV, § 4002(a)(8), Nov. 2, 2002, 116 Stat. 1807; Pub. L. 108–21, title IV, § 401(a), (c), (j)(5), Apr. 30, 2003, 117 Stat. 667, 669, 673; Pub. L. 111–174, § 4, May 27, 2010, 124 Stat. 1216.)

### References in Text

The Federal Rules of Criminal Procedure, referred to in subsec. (c)(2), are set out in the Appendix to this title.

Section 408 of the Controlled Substances Act, referred to in subsec. (f)(4), is classified to section 848 of Title 21, Food and Drugs.

### Amendments

2010—Subsec. (c)(2). Pub. L. 111–174 substituted "a statement of reasons form issued under section 994 (w)(1)(B) of title 28" for "the written order of judgment and commitment".

2003—Subsec. (a)(4)(A). Pub. L. 108–21, § 401(j)(5)(A), amended subpar. (A) generally. Prior to amendment, subpar. (A) read as follows: "the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or".

Subsec. (a)(4)(B). Pub. L. 108–21, § 401(j)(5)(B), inserted before semicolon at end ", taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28)".

Subsec. (a)(5). Pub. L. 108–21, § 401(j)(5)(C), amended par. (5) generally. Prior to amendment, par. (5) read as follows: "any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994 (a)(2) that is in effect on the date the defendant is sentenced;".

Subsec. (b). Pub. L. 108–21, § 401(a), designated existing provisions as par. (1), inserted par. heading, substituted "Except as provided in paragraph (2), the court" for "The court", and added par. (2) and concluding provisions.

Subsec. (c). Pub. L. 108–21, § 401(c)(2), (3), in concluding provisions, inserted ",  together with the order of judgment and commitment," after "the court's statement of reasons" and "and to the Sentencing Commission," after "to the Probation System".

Subsec. (c)(2). Pub. L. 108–21, § 401(c)(1), substituted "described, which reasons must also be stated with specificity in the written order of judgment and commitment, except to the extent that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32. In the event that the court relies upon statements received in camera in accordance with Federal Rule of Criminal Procedure 32 the court shall state that such statements were so received and that it relied upon the content of such statements" for "described".

2002—Subsec. (e). Pub. L. 107–273 inserted "a" before "minimum sentence".

1996—Subsec. (f). Pub. L. 104–294, § 601(h), amended directory language of Pub. L. 103–322, § 80001(a). See 1994 Amendment note below.

Pub. L. 104–294, § 601(b)(5), in introductory provisions, substituted "section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963)" for "section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 961, 963)".

Subsec. (f)(4). Pub. L. 104–294, § 601(b)(6), substituted "section 408 of the Controlled Substances Act" for "21 U.S.C. 848".

1994—Subsec. (a)(4). Pub. L. 103–322, § 280001, amended par. (4) generally. Prior to amendment, par. (4) read as follows: "the kinds of sentence and the sentencing range established for the applicable category of offense committed

by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994 (a)(1) and that are in effect on the date the defendant is sentenced;".

Subsec. (f). Pub. L. 103–322, § 80001(a), as amended by Pub. L. 104–294, § 601(h), added subsec. (f).

1988—Subsec. (c). Pub. L. 100–690 inserted "or other appropriate public record" after "transcription" in second sentence and struck out "clerk of the" before "court" in last sentence.

1987—Subsec. (b). Pub. L. 100–182, § 3(1), (2), substituted "court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result" for "court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result".

Pub. L. 100–182, § 3(3), inserted after first sentence "In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission."

Pub. L. 100–182, § 16(a), substituted "In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission." for "In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, the applicable policy statements of the Sentencing Commission, and the purposes of sentencing set forth in subsection (a)(2)."

Subsec. (c)(1). Pub. L. 100–182, § 17, inserted "and that range exceeds 24 months,".

1986—Subsec. (a)(7). Pub. L. 99–646, § 81(a), added par. (7).

Subsec. (b). Pub. L. 99–646, § 9(a), inserted provision relating to sentencing in the absence of applicable guidelines.

Subsec. (c). Pub. L. 99–646, § 8(a), substituted "If the court does not order restitution, or orders only partial restitution" for "If the sentence does not include an order of restitution".

Subsec. (d). Pub. L. 99–646, § 80(a), struck out "or restitution" after "notice" in heading, and struck out "or an order of restitution pursuant to section 3556," after "section 3555," in introductory text.

Subsec. (e). Pub. L. 99–570 added subsec. (e).

## Effective Date of 1994 Amendment

Section 80001(c) of Pub. L. 103–322 provided that: "The amendment made by subsection (a) [amending this section] shall apply to all sentences imposed on or after the 10th day beginning after the date of enactment of this Act [Sept. 13, 1994]."

## Effective Date of 1987 Amendment

Amendment by Pub. L. 100–182 applicable with respect to offenses committed after Dec. 7, 1987, see section 26 of Pub. L. 100–182, set out as a note under section 3006A of this title.

## Effective Date of 1986 Amendments

Section 8(c) of Pub. L. 99–646 provided that: "The amendments made by this section [amending this section and section 3663 of this title] shall take effect on the date of the taking effect of section 3553 of title 18, United States Code [Nov. 1, 1987]."

Section 9(b) of Pub. L. 99–646 provided that: "The amendments made by this section [amending this section] shall take effect on the date of the taking effect of section 3553 of title 18, United States Code [Nov. 1, 1987]."

Section 80(b) of Pub. L. 99–646 provided that: "The amendments made by this section [amending this section] shall take effect on the date of the taking effect of section 212(a)(2) of the Sentencing Reform Act of 1984 [section 212(a)(2) of Pub. L. 98–473, effective Nov. 1, 1987]."

Section 81(b) of Pub. L. 99–646 provided that: "The amendments made by this section [amending this section] shall take effect on the date of the taking effect of section 212(a)(2) of the Sentencing Reform Act of 1984 [section 212(a)(2) of Pub. L. 98–473, effective Nov. 1, 1987]."

Section 1007(b) of Pub. L. 99–570 provided that: "The amendment made by this section [amending this section] shall take effect on the date of the taking effect of section 3553 of title 18, United States Code [Nov. 1, 1987]."

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).*

## Effective Date

Section effective Nov. 1, 1987, and applicable only to offenses committed after the taking effect of this section, see section 235(a)(1) of Pub. L. 98–473, set out as a note under section 3551 of this title.

## Report by Attorney General

Pub. L. 108–21, title IV, § 401(l), Apr. 30, 2003, 117 Stat. 674, provided that:

"(1) Defined term.—For purposes of this section [amending this section, section 3742 of this title, and section 994 of Title 28, Judiciary and Judicial Procedure, enacting provisions set out as a note under section 991 of Title 28, and enacting provisions listed in a table relating to sentencing guidelines set out under section 994 of Title 28], the term 'report described in paragraph (3)' means a report, submitted by the Attorney General, which states in detail the policies and procedures that the Department of Justice has adopted subsequent to the enactment of this Act [Apr. 30, 2003]—

"(A) to ensure that Department of Justice attorneys oppose sentencing adjustments, including downward departures, that are not supported by the facts and the law;

"(B) to ensure that Department of Justice attorneys in such cases make a sufficient record so as to permit the possibility of an appeal;

"(C) to delineate objective criteria, specified by the Attorney General, as to which such cases may warrant consideration of an appeal, either because of the nature or magnitude of the sentencing error, its prevalence in the district, or its prevalence with respect to a particular judge;

"(D) to ensure that Department of Justice attorneys promptly notify the designated Department of Justice component in Washington concerning such adverse sentencing decisions; and

"(E) to ensure the vigorous pursuit of appropriate and meritorious appeals of such adverse decisions.

"(2) Report required.—

"(A) In general.—Not later than 15 days after a district court's grant of a downward departure in any case, other than a case involving a downward departure for substantial assistance to authorities pursuant to section 5K1.1 of the United States Sentencing Guidelines, the Attorney General shall submit a report to the Committees on the Judiciary of the House of Representatives and the Senate containing the information described under subparagraph (B).

"(B) Contents.—The report submitted pursuant to subparagraph (A) shall set forth—

"(i) the case;

"(ii) the facts involved;

"(iii) the identity of the district court judge;

"(iv) the district court's stated reasons, whether or not the court provided the United States with advance notice of its intention to depart; and

"(v) the position of the parties with respect to the downward departure, whether or not the United States has filed, or intends to file, a motion for reconsideration.

"(C) Appeal of the departure.—Not later than 5 days after a decision by the Solicitor General regarding the authorization of an appeal of the departure, the Attorney General shall submit a report to the Committees on the Judiciary of the House of Representatives and the Senate that describes the decision of the Solicitor General and the basis for such decision.

"(3) Effective date.—Paragraph (2) shall take effect on the day that is 91 days after the date of enactment of this Act [Apr. 30, 2003], except that such paragraph shall not take effect if not more than 90 days after the date of enactment of this Act the Attorney General has submitted to the Judiciary Committees of the House of Representatives and the Senate the report described in paragraph (3)."

## Authority To Lower a Sentence Below Statutory Minimum for Old Offenses

Section 24 of Pub. L. 100–182 provided that: "Notwithstanding section 235 of the Comprehensive Crime Control Act of 1984 [section 235 of Pub. L. 98–473, set out as a note under section 3551 of this title]—

"(1) section 3553 (e) of title 18, United States Code;

"(2) rule 35(b) of the Federal Rules of Criminal Procedure as amended by section 215(b) of such Act [set out in the Appendix to this title]; and

"(3) rule 35 (b) as in effect before the taking effect of the initial set of guidelines promulgated by the United States Sentencing Commission pursuant to chapter 58 of title 28, United States Code,

shall apply in the case of an offense committed before the taking effect of such guidelines."