# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

**Appeal No. 15-2166**

**UNITED STATES OF AMERICA,**
**Appellee**

**v.**

**JOSH A. WAIRI,**
**Defendant-Appellant**

## GOVERNMENT'S MOTION FOR SUMMARY DISPOSITION

The government respectfully moves for summary disposition of this sentencing appeal. In his brief, the defendant, Josh A. Wairi, contends that the within-Guidelines sentence of 144 months' imprisonment imposed by the district court (Young, J.) following his convictions for possession and transportation of child pornography was procedurally and substantively unreasonable. Neither claim was preserved and both would fail under any standard of review. Contrary to Wairi's claim, the record reflects that the district court made an individualized assessment of the appropriate sentence and that the sentence imposed was well within the range of sentences that could reasonably be imposed for the underlying criminal conduct. Because "no substantial question is presented," summary disposition is warranted. *See* Local Rule 27(c).

1

## Relevant Facts

### A.    Wairi's offense conduct.

In April 2014, United States Postal Inspector Scott Kelley received information from a Massachusetts State Police task force involved in investigating internet crimes against children.  [D.161, pp.81, 84, 87].[1]  The information included a computer screen name and e-mail address that had been reported in a "cyber tip" to be associated with the distribution of child pornography.  [D.161, p.88].  The tip showed that the email address was connected with a Drop Box account, a type of internet account used for sharing files between users, including picture and video files.  [D.161, pp.89-91].  Through subpoenas and publicly available search tools, the screen name and email address were linked to Wairi and to an address in Somerville, Massachusetts.  [D.161, pp.88-89].  After obtaining a warrant, Postal Inspector Kelley viewed eight videos identified in the cyber tip, which were found to depict minor boys engaged in sexually explicit conduct with adult men and with other minor boys.  [D.161, pp.94-97, 99-102].  The information obtained indicated that these videos had been uploaded by Wairi to the Drop Box account.  [D.161, pp.102].  Further investigation showed that Wairi had been a teacher in the

---

[1]Citations are as follows.  The citations "[Br._]," "[App._]," and "[S.App._]" refer to Wairi's brief, appendix, and sealed appendix.  The citation "[D._]" refers to a docket entry.  The citation "[PSR ¶_]" refers to the Pre-Sentence Report.

Somerville schools and that he lived in an apartment on Beacon Street in Somerville. [D.161, p.103-05].

Early on the morning of April 17, 2014, Postal Inspector Kelley and others went to Wairi's address to execute a search warrant. [D.161, pp.104-05]. Inside, authorities encountered Wairi and his brother. [D.161, pp.107-08]. Multiple computers and electronic storage devices, as well as a camcorder, were seized from Wairi's bedroom. [D.161, pp.114-15]. These devices were taken to a van outside where an initial screening for the presence of child pornography was begun immediately. [D.162, pp.71-72, 76-80]. Wairi agreed to talk to the investigators and, after being read his *Miranda* rights,[2] was interviewed for approximately two hours. [D.161, pp.120-23].

During the interview, Wairi stated that he was then employed as a fifth grade teacher at a school in Cambridge and had previously been employed as a fifth grade teacher at a school in Somerville. [D.161, p.127]. Wairi acknowledged his use of the screen names and email addresses identified in the cyber tip and admitted to the investigators that there were "hundreds of videos and images of child pornography" on one of his computers. [D.161, p.133]. In addition, Wairi acknowledged trading images and videos of child pornography online with various internet users he met on

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

3

a file sharing site iMGSRU.RU, a Russian website used to trade and view images of child pornography, and to having used Drop Box to trade child pornography on a number of occasions in the past. [D.161, pp.136-37, 143-44]. Wairi described the images and videos he had collected as ranging from children exposing their genitals to "more hardcore children in sex acts," including one video in which a minor male was tied up and engaging in sexually explicit conduct with an adult. [D.161, pp.146-47]. Wairi stated that he collected the material for his own sexual gratification and would view the images and videos and masturbate. [D.161, p.147]. Wairi stated that he was most sexually attracted to boys from 8 to 13 years old. [D.161, p. 151].

Wairi acknowledged that he advertised as a babysitter, and babysat for a number of families, but denied that he ever did anything inappropriate with actual children. [D.161, pp.150-51]. Wairi also initially stated that he had not taken any inappropriate pictures or videos himself, although he admitted to having "hundreds and hundreds of images and videos of kids from his teaching." [D.161, pp.148-49]. Later, however, after Postal Inspector Kelley reminded Wairi of the ongoing forensic search of his electronic devices, Wairi admitted to using his cell phone to record videos of children changing in and out of their bathing suits at a local swimming pool. [D.161, pp.154-55]. Wairi said that he did this by putting the phone in his pocket with the camera lens sticking out and acknowledged recording four or five

videos this way. [D.161, pp.155-56]. Wairi also acknowledged hiding a video camera in the bathroom at Nature's Classroom in Yarmouth Port, Massachusetts while his students were on a field trip there and recording videos of boys showering and changing clothes, [D.161, pp.161-62; D.162, pp.9-10], and making recordings using his phone in the locker room during a Nature's Classroom overnight trip his class took to Maine. [D.162, pp.27-28]. Wairi stated that he recorded these videos for self-gratification as well and would masturbate to them. [D.162, pp.31-32]. At the conclusion of the interview, Wairi stated that he was "relieved" to have "been honest" about his conduct, admitting that he had "made mistakes," but was "taking responsibility for [his] actions." [D.162, p.33].

A forensic search of the electronic devices taken from Wairi's residence revealed the presence of more than 27,000 images and videos of minors engaged in sexually explicit conduct, including oral sex, anal sex, and masturbation, some of them involving adults and others involving children engaging in sexual conduct with other children. [PSR ¶¶52, 55; *see also* D.162, pp.109-10, 127]. The images and videos were sorted into multiple folders and subfolders. [D.162, p.121]. Most of the children were minor boys, although there were also images of minor girls; some of the children were as young as toddlers. [D.162, pp.110, 121; PSR ¶¶40, 52-53]. Law enforcement also recovered a number of the videos of naked minor boys Wairi

had surreptitiously recorded in locker rooms. [D.162, pp.104, 117-18]. Some of the videos had been spliced or edited from the original recordings to focus on the genital areas of the minors depicted. [D.162, pp.133-38, 187-88].

### B.    Trial and conviction.

On March 5, 2015, a federal grand jury returned a superseding indictment charging Wairi with one count of transportation of child pornography, in violation of 18 U.S.C. §2252A(a)(1) (Count One), three counts of production and attempted production of child pornography, in violation of 18 U.S.C. §2251(a) and (e) (based on three of the locker room videos Wairi had recorded and edited) (Counts Two through Four), and one count of possession of child pornography, in violation of 18 U.S.C. §2252A(a)(5)(B) (Count Five). [D.34]. Following unsuccessful plea negotiations, [*see* App.97], the case against Wairi was tried to a jury over four days in April and May 2015. [*See* App.9-10].

At trial, the government presented testimony from law enforcement witnesses regarding the investigation, Wairi's admissions, and the results of the forensic examination of the computer. [D.161, pp.81-162; D.162, pp.4-174]. The government also introduced and presented to the jury number of representative images and videos showing the types of material Wairi had possessed and traded and several of the videos Wairi had recorded and edited. [*See, e.g.*, D.161, pp.102;

D.162, pp.132-142]. The government argued, based on this evidence, that the jury could find that Wairi both collected and transported electronic images containing child pornography. [D.163, pp.59-60]. The government further argued that Wairi's recorded videos, given their focus on the genitals of the unsuspecting minor students and subsequent editing to emphasize this focus, constituted the production or attempted production of child pornography. [D.163, pp.45-49].

Wairi did not introduce any evidence in his defense, did not cross-examine the government's witnesses, and acknowledged at trial that his conduct supported the child pornography possession and transportation charges. [*See* D.161, p.64; D.162, pp.60, 143-44, 171]. Wairi argued, however, that he was not guilty of the production or attempted production of child pornography, because the conduct he recorded was not itself sexual in nature. [D.163, pp.63-70]. At the conclusion of the trial, the jury convicted Wairi of the possession and transportation charges, but acquitted him of the production charges. [D.91].

C. **Enhancement hearing and PSR.**

Under the Sentencing Guidelines, Wairi's convictions for possession and transportation of child pornography were grouped together for sentencing purposes and assigned a base offense level ("BOL") of 22. [*See* PSR ¶67]. On May 29, 2015,

the district court, pursuant to its practice,[3] convened an evidentiary hearing to determine which potential offense level enhancements were supported by evidence under a beyond-a-reasonable-doubt standard.  [D.165, pp.3-4].  The court found that the following enhancements had been proved beyond a reasonable doubt and therefore could be properly applied:

- A two-level increase pursuant to USSG §2G2.2(b)(2), because the material involved a prepubescent minor or minor that was less than 12 years old;

- A five-level increase pursuant to USSG §2G2.2(b)(3)(B), because the offense involved the distribution of materials in exchange for something of value (*e.g.*, additional child pornography);

- A two-level increase pursuant to USSG §2G2.2(b)(6), because the offense involved the use of a computer;

- A five-level increase pursuant to USSG §2G2.2(b)(7)(D), because the offense involved 600 or more images.

[D.165, pp.27-28].  The court declined to apply a four-level enhancement pursuant to USSG §2G2.2(b)(4) for material portraying sadistic or masochistic conduct, because it found there was reasonable doubt that the images, although they "depict[ed] sexually-explicit conduct which causes pain," met the definition of sadomasochistic conduct, and because the enhancement could represent "double-

---

[3]*See generally United States v. Kandirakis*, 441 F. Supp. 2d 282 (D. Mass. 2006).  While the government does not agree with this procedure for determining the applicability of sentencing enhancements, its validity is not at issue here.

counting" with the prepubescent minor enhancement. [D.165, pp.27-28]. The court also declined to apply a two-level vulnerable victim enhancement pursuant to USSG §3A1.1(b), rejecting the government's argument that the enhancement was appropriate because some of the images included toddler-aged victims and these victims were uniquely vulnerable as compared to the broader class of prepubescent minors. [D.165, pp.13-15, 28-29].

On August 10, 2015, the Probation Office issued a PSR. The PSR facts generally tracked the trial evidence although the PSR provided additional details regarding the investigation, Wairi's admissions, and the forensic review of Wairi's electronic devices. The PSR also described statements Wairi made to a fellow inmate while in pretrial detention regarding both the charged conduct and other, uncharged conduct. [PSR ¶¶60-61]. In these statements, Wairi described conduct reflected in his admissions to law enforcement, including his secret recordings of minors while on a Nature's Classroom field trip. [PSR ¶60]. In addition, Wairi told the fellow inmate about three occasions in which he had engaged in sexual touching with actual minors while babysitting, including one occasion in which he molested two minor boys by "jerking them off." [PSR ¶61].

Consistent with the district court's findings at the enhancement hearing, the PSR determined that Wairi's BOL was 22 and that his total offense level ("TOL")

was 36, after application of the four enhancements set forth above.  [PSR ¶¶67-71, 78].  The PSR determined that Wairi's Guidelines Sentencing Range ("GSR"), based on a TOL of 36 and criminal history category ("CHC") of I, was 188 to 235 months' imprisonment.  [PSR ¶¶83, 129].  The PSR also noted that Wairi was subject to a statutory minimum sentence of five years because of his conviction on the transportation count.  [PSR ¶128].

### D.    Objections, sentencing memoranda, and sentencing hearing.

In his objections to the PSR and in a subsequently filed sentencing memorandum, Wairi argued that the facts surrounding his acquitted conduct and the statements reported by his cellmate should not be considered at sentencing.  [PSR Addendum, Def. Objs. ##1-2; App.27-28].  Wairi also objected to all of the offense level enhancements included in the PSR's calculations and argued that he should have received a reduction for acceptance of responsibility even though he had gone to trial.  [App.36-44].  With respect to the reduction for acceptance of responsibility, Wairi stated that he had offered to plead guilty to the transportation and possession counts prior to trial (and had admitted guilt of these offenses at trial) and that the trial had only occurred because the government would not dismiss the production counts.  [App.24-25, 42-44].  As a result, Wairi asked that the reduction be applied even though the case went to trial.  [App.42-44].

Wairi further asked that the district court impose a sentence of five years, the mandatory minimum. [App.20]. Wairi contended, among other things, that the child pornography provisions of the Sentencing Guidelines were "too severe," [App.35], and that the court should take into account his lack of criminal history, his remorse, his youth at the time he became involved in viewing child pornography, and his positive contributions as a teacher in determining his sentence. [*See* App.26-33]. Wairi attached to his memorandum several letters from his mother, Vicki, and other friends of the family attesting to his character, [S.App.55-72], and a "Psychosexual Evaluation" of Wairi by Leo D. Keating, a licensed social worker with experience in diagnosing and treating sex offenders. [S.App.74-75]. This report concluded, based on interviews and tests administered to Wairi, that Wairi did not appear to have an "ingrained sexual preference for children," but that it was a "conditioned response" based on his viewing such material over years—according to Wairi, he had begun viewing child pornography many years ago, when he himself was an adolescent. [S.App.80-81].

The government recommended a sentence of 188 months' imprisonment— the bottom of the calculated GSR. [App.69]. The government argued that the Guidelines enhancements had been properly applied and that a within-Guidelines sentence was appropriate in light of Wairi's egregious criminal conduct. [App.70-

11

87].  The government emphasized, among other things, the sheer scale of Wairi's involvement in obtaining and exchanging child pornography, which included more than 27,000 images associated with 125 known child victims, and the devastating betrayal of trust reflected in Wairi's use of recording devices to create videos of his own students while naked.  [*See* App.73, 76-77, 81-83].  The government opposed the court granting Wairi a two-level reduction for acceptance of responsibility under USSG §3E1.1(a) on the ground that Wairi had "opted to proceed to trial" on all the charges[4] and had also contested the sentencing enhancements.  [App.75].  The government also declined to recommend a reduction of an additional level pursuant to USSG §3E1.1(b).  [App.75-76].[5]

At Wairi's sentencing hearing, the district court stated that it would consider Wairi's objections to the offense level enhancements as arguments for a variance or

---

[4]At Wairi's sentencing hearing, the government pointed out that Wairi could pled guilty to the possession and transportation counts, leaving only the production counts for trial, but had chosen not to do so for strategic reasons, thus requiring the government to present evidence on all the charges.  [App.98-100].

[5]USSG §3E1.1(b) authorizes an additional one-level reduction in a defendant's offense level where the defendant has received the two-level reduction contemplated by §3E1.1(b) and "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial . . . ."  In *United States v. Beatty*, this Court held that this language "gives the government discretion . . . to determine whether to file such a motion" and that the third level may not be awarded if such a motion is not filed.  538 F.3d 8, 14-15 (1st Cir. 2008).

departure from the Guidelines, rather than an argument that the enhancements were not supported by the record, and Wairi agreed. [App.94-95]. With respect to acceptance of responsibility, the court determined, over the government's objection, that "in the unique circumstances of this case" a three-level reduction should be applied even though Wairi went to trial. [App.104]. The court thus found that Wairi's TOL was 33 and his GSR was 135 to 168 months. [App.104].

In making its sentencing recommendation, the government maintained that a 188-month sentence would be appropriate. The government again emphasized Wairi's extensive involvement in viewing, collecting, and distributing child pornography over a lengthy period of time, which resulted in continuing harm to the child victims, and Wairi's abuse of his position as a teacher to be around young children and then record them naked. [*See generally* App.105-21]. The government also disputed Wairi's position in his sentencing memorandum that he had fully accepted responsibility for his actions, noting that Wairi had continued during his discussions with law enforcement to minimize his involvement with child pornography and the nature of the pornography, including the very young age of some of the victims. [App.115-16]. In addition, the government challenged Wairi's attempt, reflected in the evaluation, to characterize his interest in child pornography as part of a "fantasy world" that had begun when he was younger, noting that the

13

actions of which Wairi was convicted occurred when he was in his 20s and included the video recording of his actual students, reflecting that "he knew exactly what he was doing when he did it."  [App.117-19].

Wairi, in turn, argued for a statutory minimum sentence of five years, emphasizing his lack of prior criminal activity, his recognition of the wrongfulness of his conduct, and his otherwise positive contributions to the community as reflected in letters filed on his behalf.  [App.123-28].  Wairi contended that a five-year sentence, coupled with intensive therapy, would be sufficient to punish him for his criminal conduct and to protect the public.  [App.124-26].

Following an allocution, in which Wairi apologized to the people hurt by his actions, [App.128-29], the district court imposed a sentence of 12 years' incarceration (144 months) and eight years' supervised release.  [S.App.83].  In explaining its sentence, the court stated that this was "an extraordinarily troubling case."  [App.84].  The court noted that, although it had not imposed an enhancement for sadomasochistic images, it "would have been warranted" to do so.  [App.84-85].  The court also stated its agreement with "everything [the government] so persuasively argued" regarding Wairi's history and the impact of his actions on his victims.  [App.85].  The court noted that Wairi was "a serial offender year after year after year" in obtaining and trading child pornography and that it was because of

conduct like his "that children have been and are being abused in this fashion." [App.85]. The court also described Wairi's offense as "one of the worst [the] court ha[d] seen of this type." [App.85]. For all these reasons, the court stated that it found a sentence of 144 months to be "a fair and a just sentence." [App.85].

## ARGUMENT

**WAIRI'S WITHIN-GUIDELINES SENTENCE WAS PROCEDURALLY AND SUBSTANTIVELY REASONABLE.**

On appeal, Wairi contends that his sentence was procedurally unreasonable, because the district court failed to give adequate consideration to the lower sentence he proposed, [Br.15-19], and substantively unreasonable, because it lacked "proportionality" in light of his personal history. [Br.19-26]. Wairi's challenges are unpreserved and without merit in any event.

### A.    Standard of review.

This Court "review[s] challenges to the reasonableness of a sentence by means of a two-step pavane." *United States v. Bermudez-Melendez*, 827 F.3d 160, 163 (1st Cir. 2016). The Court first "examine[s] assignments of procedural error, which include failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the §3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."

*Id.* (internal quotation marks and citation omitted). The Court then "appraise[s] the substantive reasonableness of the sentence, taking into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* (internal punctuation marks and citation omitted).

Where preserved, both substantive and procedural reasonableness claims are reviewed for abuse of discretion. *Id.* Unpreserved claims are reviewed only for plain error, *id.* at 163-64, although this Court has provided mixed signals as to whether substantive reasonableness claims must be separately preserved. *See United States v. Ruiz-Huertas*, 792 F.3d 223, 228 & n.4 (1st Cir.), *cert. denied*, 136 S. Ct. 258 (2015). Plain error review "'entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" *Bermudez-Melendez*, 827 F.3d at 164 (quoting *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir. 2001). Here, Wairi did not state an objection to the reasonableness of his sentence on either procedural or substantive grounds. His claims, however, would fail even if deemed preserved.

### B.    Wairi's sentence is procedurally reasonable.

Wairi contends that the district court committed procedural error by failing to directly address his proposal, based in part on the Psychosexual Evaluation

16

submitted by Keating, [Br.15-16], that a shorter period of incarceration combined with intensive sex offender treatment could serve "as an alternative to extended incarceration." [Br.18]. According to Wairi, the court's refusal to address the issue shows that it did not adequately consider the "history and characteristics of the defendant," as required by §3553(a), [Br.10-11], or impose a "truly individualized sentence." [Br.18]. This claim fails to establish any error, much less plain error.

As Wairi concedes, while the district court must consider the §3553(a) factors, it need not address them "one by one in some sort of rote incantation when explicating its sentencing decision." [Br.15 (quoting *United States v. Dixon*, 449 F.3d 194, 205 (1st Cir. 2006))]; *see also United States v. Lozada-Aponte*, 689 F.3d 791, 793 (1st Cir. 2012) (noting that this Court "do[es] not require an express weighing of mitigating and aggravating factors or that each factor be individually mentioned"). Moreover, this Court may draw inferences as to the factors considered important by the court from what the parties argued and what the court did. *See United States v. Angulo-Hernandez*, 565 F.3d 2, 13 (1st Cir. 2009).

Here, the district court stated that it had reviewed all the materials submitted to it by both parties, [*see* App.94 ("I've read all the papers"), 105 ("I have read everything that's submitted both on behalf of the government and the defense and I've thoroughly read the presentence report.")], and the court's detailed questions

support that statement.  The court's imposition of Wairi's sentence also followed an argument in which the government emphasized the factors that made Wairi's conduct particularly egregious as compared to others convicted of similar crimes and directly challenged Wairi's suggestion that his criminal culpability was lessened by the factors identified in Keating's report, including the fact that his interest in child pornography had begun when he was young.  [*See* App.117 (noting that Wairi "continued this habit . . . into adulthood" and "was possessing and viewing child pornography the very day before his arrest")].  In imposing sentence, the court expressly stated its agreement with "everything [the government] so persuasively argued" in support of its recommendation.  [S.App.85].

Given this, the fact that the district court focused on the seriousness of Wairi's offense when sentencing him, and did not expressly discuss its reasons for rejecting Wairi's recommendation, does not demonstrate that the court "ignored the issue altogether."  [Br.18].  Rather, the reasonable "inference is that the court was unimpressed" with his proposal.  *United States v. Martins*, 413 F.3d 139, 154 (1st Cir. 2005); *accord Lozado-Aponte*, 690 F.3d at 793 ("[T]hat the district court did not explicitly mention [the defendant's proposed mitigating factors] during the sentencing hearing suggests that they were unconvincing, not ignored.").  The court may have agreed with the government that the circumstances did not support Wairi's

position that he had fully accepted responsibility or that his history made his risk of recidivism less. The court could also have reasonably concluded that the need to provide just punishment was of greater importance, given the scale of Wairi's involvement in child pornography and his betrayal of his position of trust as a teacher. *See United States v. Villanueva Lorenzo*, 802 F.3d 182, 186 (1st Cir. 2015) (noting that a defendant "is entitled to a weighing of relevant factors, 'not to a particular result'") (quoting *United States v. v. Carrasco-De-Jesus*, 589 F.3d 22, 29 (1st Cir. 2009)). On this record, Wairi has not shown any error, much less plain error, in the court's consideration of the relevant factors and imposition of a particularized sentence.

## C.    Wairi's sentence is substantively reasonable.

Wairi's claim of substantive unreasonableness is also meritless. In arguing that the district court abused its discretion, Wairi again focuses on the court's alleged failure to adequately consider personal factors favoring a shorter sentence. [Br.19-26]. Wairi does not begin, however, to demonstrate that his within-Guidelines sentence was unreasonable.

"A sentence is substantively reasonable so long as it rests on a plausible sentencing rationale and embodies a defensible result." *United States v. Dunfee*, 821 F.3d 120, 133 (1st Cir. 2016) (per curiam) (internal quotation marks and citation

omitted).  "A challenge directed at substantive reasonableness is usually a heavy lift, and reversal is particularly unlikely when . . . the sentence imposed fits within the compass of a properly calculated [GSR]."  *Ruiz-Huertas*, 792 F.3d at 228-29 (internal quotation marks and citation omitted).  To prevail, a defendant "must adduce fairly powerful mitigating reasons and persuade [this Court] that the district court was unreasonable in balancing the pros and cons despite the latitude implicit in saying that a sentence must be reasonable."  *United States v. Clogston*, 662 F.3d 588, 593 (1st Cir. 2011) (internal quotation marks and citation omitted).

Here, the 144-month sentence was within the 135 to 168 month GSR calculated by the district court.  [*See* App.104].  That GSR, moreover, already reflected the district court's resolution of a number of issues in Wairi's favor, including its refusal to impose enhancements for sadomasochistic images or vulnerable victims and its decision to grant Wairi a three-level reduction for acceptance of responsibility.[6]  Wairi nonetheless contends that his sentence should

---

[6]Each of these determinations is at least questionable.  At sentencing, the district court itself said that the sadomasochistic image enhancement could have been applied, supporting the inference that its omission was due to the court's erroneous reliance on a beyond-a-reasonable-doubt standard for enhancements.  The court's refusal to apply the vulnerable victim enhancement is also debatable, given precedent supporting application of the enhancement where a child pornography case involves very young victims.  *See United States v. Jenkins*, 712 F.3d 209, 214 (5th Cir. 2013); *United States v. Lynn*, 636 F.3d 1127, 1138-39 (9th Cir. 2011).  *But see United States v. Dowell*, 771 F.3d 162, 174 (4th Cir. 2014).  Finally, the court's award of a three-level reduction for acceptance of responsibility was incorrect.  Even

be deemed unreasonable, arguing that the court was overly influenced by the egregiousness of his conduct and a desire to "vindicate" the purposes underlying the statutes criminalizing child pornography.  [*See* Br.20-23].  This argument goes nowhere.

As this Court has acknowledged, "the sentencing guidelines for child pornography cases are very stern"; nonetheless, a court is under no obligation to vary from the GSR calculated under those guidelines on policy grounds (or any other grounds), although it may do so.  *Clogston*, 662 F.3d at 588.  In this case, the court had ample reason to find that no variance was warranted.  As the district court pointed out, Wairi's extensive and long-term involvement in collecting and trading child pornography was precisely the conduct the child pornography laws sought to deter, since it sustained the market for this material that led to the continuing victimization of children.  While this alone would have justified a within-Guidelines sentence, the sentence was further justified by the extraordinary betrayal of trust demonstrated by Wairi's repeated creation of recordings of his own students changing and showering.  The district court acted well within its discretion in finding these factors sufficiently weighty to justify the sentence imposed.  *United States v.*

_____

assuming the court properly granted the initial two-level reduction, it could not grant the third level pursuant to USSG §3E1.1(b) because the government did not move for that reduction.  *See Beatty*, 538 F.3d at 14-15.  Given that the government is requesting affirmance, however, this Court has no need to reach these issues.

*Zapata*, 589 F.3d 475, 488 (1st Cir. 2009) (noting that a district court's "decision to emphasize the nature of the crime over the mitigating factors [is] a choice of emphasis that is not a basis for a founded claim of sentencing error") (internal quotation marks and citations omitted).

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court summarily affirm the judgment of the district court.[7]

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:    /s/ *Randall E. Kromm*
RANDALL E. KROMM
Assistant U.S. Attorney

---

[7]Should the Court determine that summary disposition is inappropriate, the government requests permission to file a brief more fully addressing the issues presented in this appeal.

## **Certificate of Service**

I, Randall E. Kromm, AUSA, hereby certify that on October 7, 2016, I electronically served a copy of the foregoing document on the following registered participants of the CM/ECF system:

Raymond E. Gillespie, Esq.
875 Massachusetts Avenue, Suite 32
Cambridge, MA  02139

/s/ *Randall E. Kromm*
RANDALL E. KROMM
Assistant U.S. Attorney

23